# EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

**Date Purchased: July 7, 2026**
**Index No.:**

**Plaintiff designates New York County as the place of trial**

**The basis of the venue is Defendant JC Elite Construction Services, LLC Place of Business:**
**211 E. 43rd Street**
**New York, New York 10017**

**LMEC ELECTRIC, Inc.**

**Plaintiff,**

**- against -**

**RELATED COMPANIES, L.P., ROSS BLAU, JEFF T. BLAU, BRUCE BEAL, JR., KENNETH WONG, 50 HYMC OWNER LLC, JC ELITE CONSTRUCTION SERVICES, LLC, WELLS FARGO BANK, N.A., JPMORGAN CHASE BANK, N.A., MFA FINANCE II LLC, NOVA ELECTRIC, LLC, P&H PAINTING INC., COASTAL TILE & MARBLE, INC., STREAMSTOWN CONSTRUCTION/REN INC., L.E.A. ELECTRIC CORP., MASS MERCHANDISING SELF SELECTION EQUIPMENT CORP., CHELSEA FLOOR COVERING ACQUISITION CORP., ESTEL AMERICA INC., and AINSWORTH, Inc.**

**Defendants,**

**SUMMONS**

To the above named Defendants

**YOU ARE HEREBY SUMMONED** and required to appear in the Supreme Court of the COUNTY OF New York at the office of the Clerk of the said Court at 60 Centre Street, in the County of New York, State of New York to answer the complaint in this action and serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear, judgment will be taken against you by default for the relief demanded in the notice set forth below.

Dated: New York, New York
July 7, 2026

SCHRIER SHAYNE, P.C.

S/Richard E. Schrier
By: RICHARD E. SCHRIER, Esq.
265 E. 38TH Street, Suite 1705
New York, New York 10018
212-566-4949
(516) 739-8000

**NOTICE:** The nature of this action is Lien foreclosure, Breach of Contract, Quantum Meruit, Misrepresentation, Fraud in the inducement, Breach of Duty of Good Faith and Fair Dealing, Declaratory judgment, RICO claim. The relief sought is money damages and equitable relief.

Upon your failure to appear, judgment will be taken against you by default for the sum of $75,525.02 with interest at nine percent (9%) per annum from July 24, 2024, legal fees, Punitive Damages and the costs of this action.

To: **RELATED COMPANIES, LP**
**30 Hudson Yards, New York, New York 10001**

**ROSS BLAU**
**C/O RELATED COMPANIES, LP**
**30 Hudson Yards, New York, New York 10001**

**JEFF T. BLAU**
**C/O RELATED COMPANIES, LP**
**30 Hudson Yards, New York, New York 10001**

**BRUCE BEAL, JR.**
**C/O RELATED COMPANIES, LP**
**30 Hudson Yards, New York, New York 10001**

**KENNETH WONG**
**C/O RELATED COMPANIES, LP**
**30 Hudson Yards, New York, New York 10001**

**50 HYMC OWNER LLC**
**c/o The Related Companies, LP**
**30 Hudson Yards, New York, New York 10001**

**JC ELITE CONSTRUCTION SERVICES, LLC,**
**211 E. 43rd Street, New York, New York 10017**

**WELLS FARGO BANK, N.A.,**
**420 Montgomery Street, San Francisco, Calif, 94104**

**JPMORGAN CHASE BANK, N.A.,**
**383 Madison Avenue, New York, New York 10179**

**MFA FINANCE II LLC,**
**1251 Avenue of the Americas, New York, New York 10020**

**NOVA ELECTRIC, LLC,**
**130 W. 37th Street, New York, New York 10018**

**P&H PAINTING INC.,**
**7 Purdy Street, Harrison, New York 10528**

**COASTAL TILE & MARBLE, INC.,**
**102 Fairview Park Drive, Elmsford, New York 10523**

**STREAMSTOWN CONSTRUCTION/REN INC.,**
**189 Hayte Avenue, Yonkers, New York 10704**

**L.E.A. ELECTRIC CORP.,**
**293 East 10th Street, New York, New York 10009**

**MASS MERCHANDISING SELF SELECTION EQUIPMENT CORP.,**
**35 Orville Drive, Bohemia, New York 11716**

**CHELSEA FLOOR COVERING ACQUISITION CORP.,**
**139 West 19th Street, New York, New York 10011**

**ESTEL AMERICA INC.,**
**444 Madison Avenue, New York, New York 10022**

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

-----------------------------------------------------------------------X

**LMEC ELECTRIC, Inc.**

Plaintiff,

- against -

**RELATED COMPANIES, L.P., ROSS BLAU, JEFF T. BLAU, BRUCE BEAL, JR., KENNETH WONG, 50 HYMC OWNER LLC, JC ELITE CONSTRUCTION SERVICES, LLC, WELLS FARGO BANK, N.A., JPMORGAN CHASE BANK, N.A., MFA FINANCE II LLC, NOVA ELECTRIC, LLC, P&H PAINTING INC., COASTAL TILE & MARBLE, INC., STREAMSTOWN CONSTRUCTION/REN INC., L.E.A. ELECTRIC CORP., MASS MERCHANDISING SELF SELECTION EQUIPMENT CORP., CHELSEA FLOOR COVERING ACQUISITION CORP., ESTEL AMERICA INC., and AINSWORTH, Inc.**

**Defendants,**

-----------------------------------------------------------------------X

**Index No.:**

**VERIFIED COMPLAINT**

**Premises: 50 Hudson Yards**
**New York, New York**
**Block: 705; Lot: 39**

Plaintiff, **LMEC ELECTRIC, INC.,** (hereinafter "LMEC") by their attorneys, Schrier Shayne, P.C.., as and for their Verified complaint against **RELATED COMPANIES, L.P., (hereinafter "Related"), ROSS BLAU, JEFF T. BLAU, BRUCE BEAL, JR., KENNETH WONG, 50 HYMC OWNER LLC** (hereinafter "HYMC"), **JC ELITE CONSTRUCTION SERVICES, LLC** (hereinafter "JC Elite"), **OCP LLC d/b/a OC CONSTURCTION MANAGEMENT** , **HUDSON YARDS CONSTRUCTION II, LLC**, **WELLS FARGO BANK, N.A., JP MORGAN CHASE BANK, N.A., MFA FINANCE II LLC, NOVA ELECTRIC, LLC, P&H PAINTING INC., COASTAL TILE & MARBLE, INC., STREAMSTOWN**

**CONSTRUCTION/REN INC., L.E.A. ELECTRIC CORP., MASS MERCHANDISING SELF SELECTION EQUIPMENT CORP., CHELSEA FLOOR COVERING ACQUISITION CORP., and ESTEL AMERICA INC.,** respectfully alleges the following upon information and belief at all times hereinafter mentioned:

**PARTIES**

1. Plaintiff, LEMC is a corporation organized and existing under and by virtue of the laws of the State of New York.

2. LEMC has a place of business located at 62-26 Myrtle Avenue, Glendale, New York 11385.

3. Defendant, RELATED COMPANIES, L.P., is a limited liability company organized and existing under and by virtue of the laws of the State of New York.

4. Defendant RELATED COMPANIES, L.P. (hereinafter "Related") maintained and still maintains a place of business located at 30 Hudson Yards, New York, New York 10001

5. Defendant, HYMC is a limited liability company organized and existing under and by virtue of the laws of the State of New York.

6. HYMC has a place of business located c/o Related Companies, L.P., 30 Hudson Yards, New York, New York 10001.

7. HYMC is a wholly owned business entity by Related.

8. Ross Blau, at all times mentioned herein was a member, parter, officer and/or director of Related.

9. Ross Blau, at all times mentioned herein was a member, parter, officer and/or director of HYMC.

10. Ross Blau maintained and still maintains offices c/o Related at 30 Hudson Yards, New

York, New York 10001

11. Jeff T. Blau, at all times mentioned herein was a member, parter, officer and/or director of Related.

12. Jeff T. Blau, at all times mentioned herein was a member, parter, officer and/or director of HYMC.

13. Jeff T. Blau maintained and still maintains offices c/o Related at 30 Hudson Yards, New York, New York 10001

14. Bruce Beal, Jr., at all times mentioned herein was a member, parter, officer and/or director of Related.

15. Bruce Beal, Jr. at all times mentioned herein was a member, parter, officer and/or director of HYMC.

16. Bruce Beal, Jr. maintained and still maintains offices c/o Related at 30 Hudson Yards, New York, New York 10001

17. Kenneth Wong at all times mentioned herein was a member, parter, officer and/or director of Related.

18. Kenneth Wong at all times mentioned herein was a member, parter, officer and/or director of HYMC.

19. Kenneth Wong maintained and still maintains offices c/o Related at 30 Hudson Yards, New York, New York 10001.

20. Defendant, JC Elite is a limited liability company organized and existing under and by virtue of the laws of the State of New York.

21. JC Elite has a place of business located at 211 East 43rd Street Suite 1600 New York, New York 10017.

22. OC Construction Management ("OC") is a limited liability company organized and existing under and by the virtue of the laws of the State of New York.

23. OC has a place of business located at 60 Columbus Circle, New York, New York 10023.

24. Hudson Yards Construction II LLC ("Hudson Yards") is a limited liability company organized and existing under and by virtue of the laws of the State of New York.

25. Hudson Yards has a place of business located at 30 Hudson Yards, 72nd Floor, New York, New York 10001.

26. Wells Fargo Bank, N.A. ("Wells Fargo") is a foreign banking corporation existing by virtue of the laws of the State of California.

27. Wells Fargo has a principal place of business located at 420 Montgomery Street, San Francisco, California 94104.

28. Wells Fargo has a principal place of business located at 500 West 33rd Street, New York, New York 10001.

29. JPMorgan Chase Bank, N.A. ("JPMorgan") is a foreign banking corporation existing under and by virtue of the laws of the State of Delaware.

30. JPMorgan has a principal place of business located at 383 Madison Avenue, New York, New York 10179.

31. MFA Finance II LLC ("MFA") is a limited liability company organized and existing under and by virtue of the laws of the State of Delaware,

32. MFA has a principal place of business located at 1251 Avenue of the Americas, New York, New York 10020.

33. Nova Electric LLC ("Nova") is a limited liability company organized and existing

under and by virtue of the laws of the State of New York.

34. Nova has a place of business located at 130 West 37th Street, New York, New York 10018.

35. P&H Painting Inc., ("P&H") is a corporation organized and existing under and by virtue of the laws of the State of New York.

36. P&H has a place of business located at 102 Fairview Park Drive, Elmsford, New York 10523.

37. Streamstown Construction/Ren Inc., ("Streamstown") is a corporation organized and existing under and by virtue of the laws of the State of New York.

38. Streamstown has a place of business located at 189 Hayte Avenue, Yonkers, New York 10704.

39. L.E.A. Electric Corp., ("L.E.A.") is a corporation organized and existing under and by virtue of the laws of the State of New York.

40. L.E.A. has a place of business located at 293 East 10th Street, New York, New York 10009.

41. L.E.A. has a place of business located at 141 West 28th Street, New York, New York 10001.

42. Mass Merchandising Self Selection Equipment Corp., ("Mass Merchandising") is a corporation organized and existing under and by virtue of the laws of the State of New York.

43. Mass Merchandising has a place of business located at 35 Orville Drive, Bohemia, New York 11716.

44. Chelsea Floor Covering Acquisition Corp., ("Chelsea") is a corporation organized and existing under and by virtue of the laws of the State of New York.

45. Chelsea has a place of business located at 139 West 19th Street, New York, New York 10011.

46. Estel America Inc., ("Estel") is a corporation organized and existing under and by virtue of the laws of the State of New Jersey.

47. Estel has a place of business located at 444 Madison Avenue, New York, New York 10022.

48. Estel has a place of business at 12 West 31st Street, New York, New York 10001.

**JURISDICTION AND VENUE**

49. This action relates to work labor and services and material supplied in connection with a construction project located at 50 Hudson Yards, New York, New York pursuant to a subcontract dated August 23, 2022 between Plaintiff, LMEC and JC Elite as the alleged contractor on the building allegedly owned by 50 HYMC OWNER, LLC.

50. Plaintiff has filed a lien against the subject property as more fully set forth hereinbelow.

51. Upon information and belief, other named Defendants have likewise filed liens against the subject premises.

52. All Defendants systematically and continuously conduct and solicit business within the State of New York, have consistently and purposefully availed themselves of the privilege of conducing activities within New York State, and by reason thereof, this Court has personal jurisdiction over Defendants pursuant to CPLR § 301.

53. This litigation arises from or relates to the construction and improvement project located at 50 Hudson Yards 54th Floor, New York, New York 10001, designated block 705 and lot 39 on the New York County tax map (the "Premises") and therefore venue is proper.

**FACTS APPLICABLE TO ALL CLAIMS**

54. Related is a multi-national business entity which owns through multiple subsidiary and affiliated business entities throughout New York and the world real estate in excess of $500 billion.

55. HYMC is an affiliate of Related and is the owner of the premises located at 50 Hudson Yards, New York 10001, designated block 705 and lot 39 on the New York County tax map (the "Project").

56. On or before August 23, 2022, HYMC, as owner, entered into a contract with JC Elite Construction Services LLC (hereinafter "JC Elite") to perform construction management services with respect to the foregoing premises (the "Project").

57. On or about August 23, 2022 JC Elite entered into a subcontract with LMEC to perform and provide specified construction services including labor, materials and services in connection with the Project.

58. A copy of Subcontract 22-056-05 between JC Elite and LMEC is attached hereto as Exhibit "A" [the "subcontract"].

59. From time to time the subcontract was amended via "change orders" entered into between the parties.

60. LMEC performed construction services as provided for in the subcontract and change orders including providing materials as required to perform the requisite construction services.

61. LMEC received partial payments for work, labor services and out-of-pocket expenses incurred, however, Defendants failed to make full payment as provided for in the subcontract and change orders.

62. By reason thereof, on or about July 24, 2024 Plaintiff served and filed a Mechanics Lien pursuant to New York Lien law.

63. A copy of the Mechanics Lien filed on July 24, 2025 is attached hereto as Exhibit "B".

64. On or about July 14, 2025, before the one (1) year anniversary of the filing of Exhibit "B", Plaintiff caused to be filed and served an Extension of Mechanics Lien, a copy of which is attached hereto as Exhibit "C".

65. The agreed price in the initial Agreement between JC ELITE and LMEC whereby LMEC agreed to supply and install electrical materials was $397,000.

66. On September 6, 2022, the parties entered into Change Order #1 at a cost of $6,992.42.

67. On September 12, 2022, the parties entered into Change Order #2 at a cost of $10,110.99.

68. On September 28, 2022, the parties entered into Change Order #3 at a cost of $34,383.00

69. On January 5, 2023, the parties entered into Change Order #4 at a cost of $5,404.80.

70. On January 5, 2023, the parties entered into Change Order #5 at a cost of $7,854.00

71. On January 11, 2023, the parties entered into Change Order #6 at a cost of $3,853.01.

72. On March 7, 2023, the parties entered into Change Order #7 at a cost of $2,212.60.

73. On March 3, 2023, the parties entered into Change Order #8 at a cost of $3,418.80.

74. On March 3, 2023, the parties entered into Change Order #10 at a cost of $901.60.

75. On March 28, 2023, the parties entered into Change Order #11 at a cost of $3,363.00.

76. On March 28, 2023, the parties entered into Change Order #12 at a cost of $1,286.85.

77. The total Change Order amendments to the Agreement totaled $79,781.67.

78. The price of the Agreement including the Change Order amendments to the Agreement totaled $476,781.07.

79. On or about January 11, 2023 JC Elite paid the sum of $188,856.59 to LMEC pursuant

to the Agreement as amended by the foregoing change orders.

80. On or about February 10, 2023 JC Elite paid the sum of $86,454.46 to LMEC pursuant to the Agreement as amended by the foregoing change orders.

81. On or about April 18, 2023 JC Elite paid the sum of $63,945.00 to LMEC pursuant to the Agreement as amended by the foregoing change orders.

82. On or about July 19, 2023 JC Elite paid the sum of $27,000 to LMEC pursuant to the Agreement as amended by the foregoing change orders.

83. On or about August 29, 2023 JC Elite paid the sum of $35,000.00 pursuant to the Agreement as amended by the foregoing change orders.

84. Despite repeated demands upon JC Elite and 50 HYMC Owner LLC, Defendants failed to pay the remaining balance of $75,525.02.

85. LMEC performed each and every obligation on its part to be performed under the Agreement as amended by the foregoing change orders.

86. On July 24, 2024, pursuant to the provisions of Lien law, LMEC caused to be timely filed with the New York Clerk's Office, A Notice Under Mechanic's Lien Law in due form (LMEC's "Lien").

87. Upon information and belief, neither the aforementioned Lien nor LMEC's claim thereunder has been waived or discharged in whole or in part.

88. The Lien states, among other things: (i) the name and the place of business of the lienor; (ii) the name of the contractor for whom labor was performed and to whom the services were furnished; (ii) the amount claimed to be due to the lienor for the furnished labor, materials, equipment and services; and (iv) a description of the property upon which the labor, materials, equipment and services were furnished. The lien was duly verified and complied in all respects with

the requirements of the Lien Law.

89. Upon information and belief, LMEC's Lien complies with all requirements of the Lien Law and will all other applicable laws and statute.

90. Upon information and belief, HYMC failed and refused to pay to JC Elite sums sufficient to pay Plaintiff pursuant to the Agreement as amended.

**THE SCHEME:**

91. Upon information and belief, Related, as a course on conduct, forms subsidiary and or affiliated business entities to own or possess through various other lease or possessory arrangements real estate and/or supervises or is responsible for the construction or renovation of real estate.

92. Upon information and belief, in connection with the construction or renovation of real estate, as a matter of a course of conduct, Related causes its subsidiary and affiliated companies to withhold payments to general contractors it engages to perform construction services on its various construction projects including in this instance, the construction project located at 50 Hudson Yards, New York, New York.

93. Upon information and belief, Related and its affiliated and/or subsidiary companies, as a matter of course of conduct, withhold significant balances from general contractors and subcontractors which have performed services and provided materials in connection with the construction projects in which services have been provided.

94. However, the amount that Related and its affiliated and/or subsidiary companies fail and refuse to pay each contractor is an amount that is substantial but small enough such that the cost of asserting their rights by way of litigation, as a practical matter, is prohibitive.

95. By reason of the foregoing, Related and its affiliates and/or subsidiaries including HYMC in the case of the construction project at 50 Hudson Yards, New York, New York, save

millions of dollars on each construction project.

96. Defendants Ross Blau, Jeff T. Blau, Bruce Beal, Jr. and Kenneth Wong as officers, members, managing members and partners of Related and HYMC were fully aware and complicit in proposing and implementing the foregoing detailed plan and scheme, particularly with respect to the project located at 50 Hudson Yards, New York, New York 10001.

97. Plaintiff relied upon the contract as amended by the "Change Orders" in performing the services and providing the required material to perform the services at the subject premises.

98. Defendants Ross Blau, Jeff T. Blau, Bruce Beal, Jr. and Kenneth Wong knew that Plaintiff as well as the other named contractor Defendants herein were relying upon the representations of payment as set forth in each of the contracts that were entered into to perform services and provide material in connection with the construction project at 50 Hudson Yards, New York, New York.

99. Plaintiff's reliance on the foregoing representations of payment was reasonable.

100.Defendants knew that Plaintiffs reliance on the foregoing representations of payment was reasonable.

101.Defendants Related, HYMC, Ross Blau, Jeff T. Blau, Bruce Beal, Jr. and Kenneth Wong knew that the forgoing representations of payment were false when made.

102.Plaintiff entered into the foregoing agreement as amended by the "change orders" to its detriment.

103.Defendants Related, HYMC, Ross Blau, Jeff T. Blau, Bruce Beal, Jr. and Kenneth Wong made the foregoing representations to induce Plaintiff into entering into the agreement as amended with Defendant JC Elite.

104.By reason of Plaintiff's reliance on the foregoing Plaintiff has been damaged.

105. By reason of the foregoing, LMEC is entitled to foreclosure of its Lien and to recover of defendants the sum of $75,525.02, together with interest thereon.

**AS AND FOR THE FIRST CAUSE OF ACTION**
**(DECLARATION FOR JUDGMENT THAT LMEC HOLDS A FIRST PRIORITY SECURITY INTEREST)**

106. LMEC repeat, re-allege and reiterate each and every allegation contained in paragraphs "1" to "105" as if fully set forth herein.

107. LMEC, as sub-contractor, entered into the Agreement with defendant, JC Elite, as general contractor, whereby LMEC agreed to furnish certain work, labor, equipment, materials and services for a construction project at the Premises and JC Elite agreed to pay LMEC the sums set forth in the Agreement.

108. Between approximately August 2022 and April 2024, at the specific instance and request of JC Elite, LMEC provided work, labor, services, equipment and materials to the Project.

109. LMEC duly performed all the terms and condition on its part to be performed pursuant to the foregoing Agreement.

110. JC Elite have refused to pay for said installed materials and provided services despite due demand for payment by LMEC.

111. JC Elite owe LMEC a remaining $75,525.02 for the installed materials and provided services delivered to and accepted by JC Elite between on or about August 2022 through and including on or about April 2024.

112. The supply and installation of electrical materials furnished by LMEC was furnished for and actually used for the improvement of the Premises with the knowledge and consent of JC Elite, the general contractor thereof and 50 HYMC OWNER LLC, as the owner of the premises.

113. Pursuant to the Lien Law, on or about July 24, 2024, within three (3) months after the

date when the last item of work, labor, services, materials and equipment was furnished, LMEC caused to be timely field with the New York County Clerk a Notice of Mechanic's Lien against the Premises.

114. Pursuant to the Lien Law, LMEC timely served a copy of the Lien upon JC Elite. An affidavit of proof of such service of the lien was duly filed with the New York County Clerk within thirty-five (35) days after the Lien was filed.

115. Neither the Lien, nor LMEC's claims thereunder, have been waived or paid, in whole or in part.

116. JC ELITE has continually failed to pay for the materials and service provided by LMEC and accepted by JC Elite and 50 HYMC Owner, LLC and Plaintiff is entitled to foreclose on the mechanic's lien on HYMC's premises arising out of the contract to perform certain work, labor and services and furnish certain materials to defendant's premises.

117. Upon information and belief, pursuant to the Lien Law (including, but not limited to, § 13 and § 22), LMEC's lien has priority over security interests claimed by all the other named Defendants, who, upon information and belief have also filed liens or other "security interests" against the subject property subsequent to the lien filed by Plaintiff herein.

118. Upon information and belief, the liens or claims of any of the other parties herein upon the Premises, are either subordinate to LMEC's lien, or are entitled only to such priority as is provided in § 13 of the Lien Law.

119. LMEC's lien complies in all respects with the requirements set forth in the Lien Law.

120. As a result, LMEC is entitled to enforce its lien against the Premises, the named defendants and any other claimants and to recover of JC Elite the sum of $75,525.02, together with interest thereon.

121. By reason of the foregoing, Plaintiff hereby demands an order declaring that Plaintiff has priority of payment over all other named Defendant lien holders

**AS AND FOR THE SECOND CAUSE OF ACTION**
**(FOR UNJUST ENRICHMENT AGAINST HYMC)**

122. LMEC repeats, re-alleges and reiterates each and every allegation contained in paragraphs "1" to "121" as if fully set forth herein.

123. The labor and services provided by LMEC were necessary and benefited the Premises.

124.LMEC has delivered and installed goods and services valued at a total amount of $476,781.07, of which $401,256.05 has been paid, leaving an outstanding balance of $75,525.02, none of which has been paid despite due demand, therefore.

125. Upon information and belief, HYMC has failed, refused, and neglected to pay JC Elite the aforementioned sum of $75,525.02.

126. JC Elite have failed, refused, and neglected to pay LMEC the aforementioned sum of $75,525.02.

127. By reason thereof, HYMC has been unjustly enriched from the benefits bestowed upon it by LMEC with HYMC's knowledge and consent.

128. By reason of the foregoing, LMEC is entitled to damages in *quantum meruit* to be determined at trial but in an amount no less than $75,525.02 plus statutory interest.

129. HYMC will be unjustly enriched unless the relief demanded in this Complaint is granted.

**AS AND FOR THE THIRD CAUSE OF ACTION**
**(FOR FRAUD IN THE INDUCEMENT AGAINST HYMC and JC ELITE)**

130. LMEC, repeats, re-alleges and reiterates each and every allegation contained in paragraph "1" to "129" as if fully set forth herein.

131. Related as the owner of HYMC, who in turn was the owner of the Premises, individually and/or through their respective companies and agents represented that it had sufficient funds to renovate the premises pursuant to the plans as filed and approved by the Building Department of the City of New York

132. Related as the owner of HYMC, who in turn was the owner of the Premises, individually and/or through their respective companies and agents knew that it lacked the funds to renovate the premises pursuant to the plans as filed and approved by the Building Department of the City of New York.

133. HYMC failed and refused to disclose to Plaintiff nor to any Defendant that it lacked the funds or that it was withholding the funds to renovate the premises pursuant to the plans as filed and approved by the Building Department of the City of New York.

134. Notwithstanding the fact that HYMC lacked the funds to renovate the premises pursuant to the plans as filed and approved by the Building Department of the City of New York, and/or intentionally elected to withhold funds, Related caused HYMC to enter into a contract with Defendant JC Elite to perform certain construction services.

135. Upon information and belief, Related and HYMC represented to JC Elite that they had sufficient funds to renovate the premises pursuant to the plans as filed and approved by the building Department of the City of New York.

136. JC Elite relied upon the representations that Reliable and HYMC had sufficient funds to renovate the premises pursuant to the plans as filed and approved by the Building Department of the City of New York and that they intended to pay JC Elite as contracted for.

137. Based upon the representations made by HYMC to JC Elite, JC Elite entered into the Agreement with LMEC including the amendments to the Agreement via the foregoing "Change Orders"

138. LMEC relied upon HYMC representations to JC Elite, as a third-party beneficiary to render payment promptly and properly for services rendered by LMEC when contracting with JC Elite and such reliance was reasonable and common in the construction services industry.

139. LMEC, in relying upon HYMC representations to JC Elite, was fraudulently induced to enter into the contract dated August 23, 2022 with JC Elite.

140. LMEC in relying upon representation made by JC Elite, was fraudulently induced to enter into the contract dated August 23, 2022 with JC Elite.

141. As a third-party beneficiary LMEC expectation of prompt and proper payment for services rendered by LMEC when contracting with JC Elite was reasonable and common in the construction services industry.

142. The foregoing reliance by LMEC was reasonable.

143. HYMC knew, or had reason to believe that LMEC would rely upon the representation by HYMC to JC Elite that it would make payment for all services and material supplied in connection with the renovation to the Premises pursuant to the plans as filed and approved by the Building Department of the City of New York.

144. LMEC's reliance was justifiable and commercially reasonable.

145. Related and HYMC knew that the representations made to JC Elite that it had sufficient funds and would pay those funds to JC Elite to renovate the premises pursuant to the plans as filed and approved by the building Department of the City of New York was false when made.

146. JC Elite knew or should have known that the representations made by HYMC to JC Elite that it had sufficient funds to renovate the premises pursuant to the plans as filed and approved by the building Department of the City of New York was false when made.

147. By reason of the foregoing, Plaintiff was fraudulently induced into entering into the Agreement dated August 23, 2022 with JC Elite

148. Related and HYMC's fraudulent conduct and misrepresentations have caused LMEC material and significant harm.

149. As a result of the foregoing described act of fraud in the inducement, LMEC has sustained damages in the sum of $75,525.02.

150. By reason of the foregoing, Plaintiff demands punitive damages.

**AS AND FOR THE FOURTH CAUSE OF ACTION**
**(FOR BREACH OF CONTRACT AGAINST JC ELITE)**

151. Plaintiff repeats, re-alleges and reiterates each and every allegation contained in paragraphs "1" to "150" as if fully set forth herein.

152. On or about August 23rd, 2022, Defendant LMEC entered into a contract with JC Elite to supply and install electrical materials and provide electrical work for the Project located at the Premises.

153. JC Elite agreed to pay LMEC the total sum of $397,000.

154. In addition to the initial contract, a series of "change order" amendments to the contract were entered into and agreed upon for an additional $79,781.67 of which there is an unpaid outstanding balance of $75,525.02.

155. LMEC has performed all the services and supplied all the materials required under and pursuant to the written agreement as amended by the "change orders".

156. LMEC has completed all contracted services and supplied all necessary materials to JC Elite's satisfaction and there are no outstanding services to be performed nor materials supplied and the contracting work has been completed in all respects.

157. JC Elite has made partial payments to LMEC for the services rendered and material supplied as set forth hereinabove, leaving the total sum of $75,525.02 outstanding.

158. LMEC had repeatedly requested payment from JC Elite.

159. Despite LMEC's demands for payment, JC Elite has failed to make payment thereon.

160. By reason of the foregoing, JC Elite has breached the aforementioned agreement.

161. By reason of the foregoing, LMEC has sustained damages in the sum of $75,525.02.

**AS AND FOR THE FIFTH CAUSE OF ACTION**
**(FOR UNJUST ENRICHMENT AGAINST JC ELITE)**

162. LMEC repeats, re-alleges and reiterates each and every allegation contained in paragraphs "1" to "161" as if fully set forth herein.

163. The labor and services provided by LMEC were necessary and benefitted the Project at the Premises.

164. LMEC has delivered and installed goods and services valued at a total amount of $476,781.07, of which $401,256.05 has been paid, leaving an outstanding balance of $75,525.02, none of which has been paid despite due demand, therefore.

165. Upon information and belief, HYMC has paid JC Elite in full for all services provided by LMEC and all materials provided by LMEC.

166. Notwithstanding the foregoing, JC Elite has failed, refused, and neglected to pay LMEC the aforementioned sum of $75,525.02.

167. By reason thereof, JC Elite have been unjustly enriched from the benefits bestowed upon them by LMEC with their knowledge and consent.

168. By reason of the foregoing, LMEC is entitled to damages in *quantum meruit* to be determined at trial but in an amount no less than $75,525.02 plus interest.

**AS AND FOR THE SIXTH CAUSE OF ACTION**
**(FOR FRAUDULENT MISPREPRESENTATION AGAINST**
**RELATED, HYMC and JC ELITE)**

169. LMEC repeats, re-alleges and reiterates each and every allegation contained in paragraphs “1” to “168” as if fully set forth herein.

170. JC Elite represented to Plaintiff that it had sufficient funds to pay Plaintiff pursuant to the Agreement dated August 23, 2022 as amended by the “Change Orders”.

171. RELATED and HYMC represented that it had sufficient funds to pay to JC Elite for the services to be rendered in connection with the renovation of the premises including for the work contracted by JC Elite with Plaintiff.

172. The foregoing representations were false when made.

173. The foregoing representations were false throughout the time period in which work by Plaintiff was being performed.

174. Defendants knew that the representations were false when made.

175. Defendants knew that the representations were false throughout the time period in which work by Plaintiff was being performed.

176. Plaintiff relied upon the foregoing representations.

177. Plaintiff reasonably relied upon the foregoing representations.

178. The foregoing misrepresentations were made for the common benefit of Related, HYMC and JC Elite in order to obtain the services of LMEC.

179. The foregoing misrepresentations were made with the knowledge of both HYMC and JC Elite as owner and general contractor to secure electrical services to be performed by Plaintiff and to provide the necessary materials to perform the required services.

180. As a result of the misrepresentation, LMEC has sustained damages in the sum of $75,525.02.

**AS AND FOR THE SEVENTH CAUSE OF ACTION**
**(BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST RELATED, HYMC and JC ELITE)**

181. LMEC repeats, re-alleges and reiterates each and every allegation contained in paragraphs "1" to "180" as if fully set forth herein.

182. LMEC and JC Elite are parties to the Agreement entered into on August 23, 2022, which constitutes a valid and enforceable contract.

183.Within the Agreement as Amended by the "Change Orders", there is an implied covenant of good faith and fair dealing.

184. Defendants owe and owed Plaintiff, a duty to act in good faith and conduct the business affairs with Plaintiff in a fair and equitable manner.

185. Defendants breached the duty by inducing Plaintiff to perform services and provide material for the construction project at 44th floor at 50 Hudson Yards, New York, New York when they had no intention of making full payment to Plaintiff for services performed and materials supplied and further failed to conduct themselves and itself consistent with the terms and conditions of the Agreement as Amended.

186. Plaintiff reasonably expected that Defendants would not violate the agreements and act in bad faith as more fully set forth hereinabove, which is implicit in the Agreement as Amended.

187. Defendants' breach of the implied covenant of good faith and fair dealing proximately caused Plaintiff to suffer damages in an amount to be determined at trial.

188. By reason of the breach of covenant of good faith and fair dealing as more fully set forth herein and the wrongful conduct of the Defendants in failing and refusing to make the payments required pursuant to the agreement as amended, Plaintiff was damaged in an amount to be determined at trial.

189. By reason of the foregoing, Plaintiff has been damaged in a sum to be determined at trial but believed to be in excess of $75,525.02 plus interest and cost and expenses of this lawsuit.

190.By reason of the foregoing, Plaintiff demands punitive damages against Defendants JC Elite and HYMC plus reasonable legal fees and the costs and disbursements of bringing this action.

**AS AND FOR THE EIGHTH CAUSE OF ACTION**
**(CONSTRUCTIVE TRUST)**

191. LMEC repeats, re-alleges and reiterates each and every allegation contained in paragraphs "1" to "190" as if fully set forth herein.

192. LMEC and JC Elite entered into an agreement whereby LMEC agreed to furnish certain work, labor, equipment, materials and services for a construction project at the Premises in exchange for JC Elite to pay the agreed upon sums in the Agreement as amended by the "Change Orders".

193. JC Elite received payment from HYMC which in equity and good conscience belongs to LMEC.

194. JC Elite is holding money in the amount of $75,525.02 plus interest which belongs to LMEC.

195. As a direct and proximate result of the foregoing acts, LMEC has sustained damages in the amount of $75,525.02.

196. By reason of the foregoing, Plaintiff demands that this Court declare that the foregoing funds are being held in trust for Plaintiff's benefit and further demands that this Court issue an order directing Defendant to release the funds to Plaintiff.

**NINTH CAUSE OF ACTION**
**(ACTION PURSUANT TO 18 USC §§ 1961-1968 {RICO CLAIM})**
**(Against Defendants Ross Blau, Jeff T. Blau, Bruce Beal, Jr. and Kenneth Wong)**

197. Plaintiff repeats, realleges and reiterates each and every allegation contained in paragraphs "1" through "196" as though fully set forth herein.

198. Related and HYMC are enterprises as defined in the RICO statutes.

199. Ross Blau is an officer of Related and HYMC.

200. Ross Blau is an employee of Related and HYMC.

201. Ross Blau is an equity owner of Related and HYMC.

202. Ross Blau is a member of Related and HYMC.

203. Ross Blau is a managing member of Related and HYMC

204. Ross Blau is a member of the Board of Directors of Related and HYMC.

205. Ross Blau exercises and exercised management and control over Related and HYMC.

206. Jeff T. Blau is an officer of Related and HYMC.

207. Jeff T. Blau is an employee of Related and HYMC.

208. Jeff T. Blau is an equity owner of Related and HYMC.

209. Jeff T. Blau is a member of Related and HYMC.

210. Jeff T. Blau is a managing member of Related and HYMC

211. Jeff T. Blau is a member of the Board of Directors of Related and HYMC.

212. Jeff T. Blau exercises and exercised management and control over Related and HYMC.

213. Bruce Beal, Jr. is an officer of Related and HYMC.

214. Bruce Beal, Jr. is an employee of Related and HYMC.

215. Bruce Beal, Jr. is an equity owner of Related and HYMC.

216. Bruce Beal, Jr. is a member of Related and HYMC.

217. Bruce Beal, Jr. is a managing member of Related and HYMC

218. Bruce Beal, Jr. is a member of the Board of Directors of Related and HYMC.

219. Bruce Beal, Jr. exercises and exercised management and control over Related and HYMC.

220. Kenneth Wong is an officer of Related and HYMC.

221. Kenneth Wong is an employee of Related and HYMC.

222. Kenneth Wong is an equity owner of Related and HYMC.

223. Kenneth Wong is a member of Related and HYMC.

224. Kenneth Wong is a managing member of Related and HYMC

225. Kenneth Wong is a member of the Board of Directors of Related and HYMC.

226. Kenneth Wong exercises and exercised management and control over Related and HYMC.

227. Each of the individual named Defendants, acted in their respective capacity as an employee and/or officer and/or director and/or member and/or managing member and/or equity owner of Related and HYMC.

228. Each of the individual named Defendants participated in the wrongful conduct on

behalf of Related and HYMC, as more fully set forth hereinabove.

229. The Racketeering conduct alleged herein is the fraudulent conduct set forth hereinabove.

230. The pattern of racketeering activity alleged hereinabove includes but is not limited to the ongoing fraudulent policies and practice of the individual Defendants:

a. Utilizing the Related and HYMC "enterprise" to fraudulently induce Plaintiff to enter into the Agreement as Amended;

b. Utilizing the Related and HYMC "enterprise" to induce the Plaintiff and co-defendant contractors to enter into what appeared to be a lucrative construction agreements as amended with HYMC, as set forth above;

c. Utilizing the Related and HYMC "enterprise" to withhold payments to Plaintiff and the other named co-defendant contractors;

d. Misrepresenting that Defendants would fund the construction project when in fact as a matter of implementation of the foregoing described "Scheme" of withholding payments after the work, labor, and services were completed and the materials necessary to perform the work, labor and services were already installed in the construction project, thereby breaching the Agreement with Plaintiff as well as with other contractors;

e. Utilizing the Related and HYMC "enterprise" to fabricate reasons why Related and HYMC should not honor the terms and conditions of the Agreements with the various co-defendant contractors; and

f. Utilizing the Related and HYMC "enterprise" to realize millions of dollars in "savings" in connection with the construction project.

231. Further, the pattern of racketeering activity and the fraudulent policies and conduct of the Defendants as set forth in great detail hereinabove, has been ongoing since at least August 2022 and upon information and belief is still ongoing.

232. The result of the foregoing pattern of racketeering activity and the fraudulent policies and conduct of the Defendants, as set forth hereinabove was that Plaintiff, has been damaged in the sum in excess of $75,000 and has been caused to incur substantial legal fees and expenses.

233. The foregoing policies orchestrated by the Defendants has been and continues to be ongoing and repetitive as demonstrated hereinabove by the multiple specific transactions identified in detail hereinabove that followed the same pattern again and again.

234. As set forth hereinabove, Defendants have implemented the same or similar scheme on other companies including but not limited to the co-defendant contractors as set forth hereinabove.

235. By reason of the repeated conduct and the wrongful conduct of the Defendants, as set forth hereinabove, there is every reason to believe that without court intervention, the conduct of the Defendants shall continue indefinitely into the future.

236. The foregoing policy was part and parcel of the fraudulent conduct and scheme by Defendants to induce Plaintiff to enter into the Agreement as amended as well as induce other businesses to be lured into the same or similar "Scheme" as set forth hereinabove.

237.The damages as set forth herein were proximately caused by the violations of the RICO statutes (18 USC §§1961-1968 and more particularly 18 USC § 1965)

238.By reason of the foregoing, Plaintiff was damaged as more fully set forth herein

which was caused by the wrongful conduct of the Defendants in causing and directing Related and HYMC to cease making the payments required pursuant to the agreements as amended with Plaintiff and withholding material information from Plaintiff.

239.The foregoing was a Racketeering activity as described and set forth by the RICO statutes.

240. Plaintiff was damaged in an amount to be determined at trial.

241. By reason of the foregoing, Plaintiff has been damaged in a sum to be determined at trial but believed to be in excess of $75,000.00 plus interest and cost and expenses of this lawsuit.

242. By reason of the foregoing, Plaintiff demands punitive damages against all Defendants plus reasonable legal fees and the costs and disbursements of bringing this action.

243. Pursuant to the RICO statutes, Plaintiff hereby demands treble damages plus attorney's fees and the costs of this lawsuit.

**AS AND FOR THE TENTH CAUSE OF ACTION**
**(LIEN FORECLOSURE)**

244. LMEC repeat, re-allege and reiterate each and every allegation contained in paragraphs "1" to "243" as if fully set forth herein.

245. Defendant HYMC is the sole, true and lawful owner of 50 Hudson Yards, New York, New York.

246. As set forth is detail hereinabove, Plaintiff filed a Mechanics Lien on the foregoing premises on July 24, 2024, a copy of which is attached as Exhibit "B".

247. As set forth in detail hereinabove, Plaintiff filed an Extension of Mechanics Lien on July 14, 2025, a copy of which is attached as Exhibit "C".

248. Defendants have failed to make payment of the sum that is due and owing to Plaintiff for services performed on the premises and for materials supplied by Plaintiff and installed on the premises.

249. By reason of the aforesaid default by Defendant HYMC, Plaintiff hereby demands the following:

(a) Defendants, OCP LLC d/b/a OC CONSTURCTION MANAGEMENT, HUDSON YARDS CONSTRUCTION II, LLC, WELLS FARGO BANK, N.A., JPMORGAN CHASE BANK, N.A., MFA FINANCE II LLC, NOVA ELECTRIC, LLC, P&H PAINTING INC., COASTAL TILE & MARBLE, INC., STREAMSTOWN CONSTRUCTION/REN INC., L.E.A. ELECTRIC CORP., MASS MERCHANDISING SELF SELECTION EQUIPMENT CORP., CHELSEA FLOOR COVERING ACQUISITION CORP., ESTEL AMERICA INC., and AINSWORTH, Inc. and all persons claiming by, though and under them subsequent to the filing of the Mechanics Lien filed by Plaintiff on July 24, 2024, be barred and foreclosed of and from all right, claim, lien, title and equity of redemption of, in and to the Premises, and each and every part thereof;

(b) The Premises be decreed to be sold according to law and in parcel; and;

(c) The sum due to Plaintiff, to wit: $75,525.02 be paid together with interest, late charges, and attorney's fees as provided by

laws, the expenses of sale, costs and disbursements of this action and any charges plaintiff may be called upon to pay for repairs, insurance, real estate taxes;

(d) If the proceeds of said sale, of the aforesaid Premises are insufficient to pay the amount due to Plaintiff, with interest, late charges, real estate taxes, attorney's fees, other charges and the costs and expenses of this action, the officer making the sale be required by the judgment of sale herein to specify the amount of such deficiency in his report of sale so that application may be made by plaintiff, to this Court, pursuant to Section 1371 of the Real Property Actions and Proceedings Law, for a judgment against Defendants JC Elite and HYMC for any deficiency which may remain; and

(e) That the referee (or other officer) making such sale be directed to pay from the proceeds thereof all taxes, assessment, water rates and other charges which are liens on the property sold in accordance **with** Section 1354 of the Real Property Actions and Proceedings Law; and

(f) A receiver be appointed forthwith to receive and collect the rents, issues and profits derived from the Mortgaged Premises during the pendency of this action with the usual powers and directions; and

(g) Plaintiff have such other, further or different relief as may be just, proper and equitable with reasonable counsel fees, costs

and disbursements.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants as follows:

First Cause of Action: Declaration that Plaintiff's Lien has 1st priority over all other liens filed against the subject premises;

Second Cause of Action: Unjust Enrichment against HYMC: $75,525.02

Third Cause of Action: Fraud in the Inducement against HYMC and JC Elite: $75,525.02

Fourth Cause of Action: Breach of Contract against JC Elite: $75,525.02

Fifth Cause of Action: Unjust Enrichment against JC Elite: $75,525.02

Sixth Cause of Action: Fraudulent Misrepresentation against HYMC and JC Elite: $75,525.02

Seventh Cause of Action: Breach of Covenant of Good Faith and Fair Dealing against JC Elite and HYMC: $75,525.02

Eighth Cause of Action: Constructive Trust against JC Elite

Ninth Cause of Action: RICO CLAIM: Treble damages plus legal fees and costs and disbursements of the litigation

Tenth Cause of Action: Lien Foreclosure

Together with Legal fees, disbursements of this action and statutory interest.
**IN ADDITION, PLAINTIFF DEMANDS PUNITIVE DAMAGES AS MAY BE APPROPRIATE HEREUNDER.**

Dated: July 7, 2026
New York, New York

Yours, etc.
SCHRIER SHAYNE, P.C.

__/s/Richard E. Schrier__________
By: RICHARD E. SCHRIER, ESQ.
262 W. 38th Street
New York, New York 10018
212-566-4949/516-739-8000
Direct: 516-578-8999
resincourt@aol.com
richardschrier@gmail.com

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK )
) ss.:
COUNTY OF NEW YORK )

I, the undersigned, an attorney duly admitted to practice law in the Courts of the State of New York, state that I am a member of the firm Of Schrier Shayne, P.C. and am the attorney of record for the Plaintiff LMEC Electric, Inc. in the within action.

I have read the foregoing Verified Complaint and know the contents thereof; that the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe it to be true.

I further state that the reason this verification is made by me and not by Plaintiff, is that Plaintiff's place of business is in a county other than the county where I maintain my offices.

The grounds of my belief as to all matters not stated upon my own knowledge are based on my file, together with the books, records and documents contained therein.

The undersigned affirms that the foregoing statements are true, under the penalties of perjury.

Dated: New York, New York
July 7, 2026

s/Richard E. Schrier
RICHARD E SCHRIER, ESQ.

ELITE CONSTRUCTION

**Sub-Contract 22-056-05**

Date: **8/23/2022**
Project: **50 Hudson Yards**
Project #: **J22-056**
Name: **50 Hudson Yards 44th Floor – L64 Marketing**
Owner: **Related Companies and Oxford Properties**
Architect: **Foster and Partners**
Engineers: **WSP Parsons Brinckerhoff**

ARTICLE I.0
AGREEMENT

JC Elite Construction Services, LLC (Contractor), would like **LMEC Electric** to perform certain construction services for the above-identified project in accordance with the scope of work set forth below. By signing below, the Contractor and Subcontractor agree to this Work Order.

1.1 Time is of the essence
It is agreed and understood between all parties that time is of the essence of this agreement and each of its terms. The Subcontractor agrees to perform its requisite obligations under the terms of this Work Order, and Subcontractor shall complete its work under this Work Order in accordance with the Schedule (1.5, C, i-iv) indicated below.

1.2 Price
The Contractor shall pay to the Subcontractor the sum of **$397,000** for performance of the work identified in this Work Order subject to additions and deductions for changes in the scope of work.

1.3 Mechanics and Material Liens
The Subcontractor shall, on his time and expense, submit to the Contractor a release of all mechanics and material liens and manufacturer warranty and materials information for all materials installed prior to final payment of the consideration set forth hereafter.

1.4 Progress Payments/Final Payment
Progress payments and Final payment shall be made by the Contractor to the Subcontractor when the Contract work has been performed by the Subcontractor and when payment is received from the owner. Applications for payments, including Final Payment must be received by the twentieth (20th) of each month payment shall be made. Contractor will provide payment to Subcontractor not more than thirty (**30 days**) days after approval by Contractor and receipt of payment from owner. It is hereby agreed and understood that the Contractor will provide payment to Subcontractor when and only when the Contractor has received payment for that particular Application for Payment from the Owner.

1.5 Subcontractor's Obligations

A. The Subcontractor is heretofore obligated and agrees to provide all materials tools, equipment, supervision, supplies, permitting and other items necessary or required to execute the following work and to perform all necessary work, including work incidental thereto and reasonably inferable therefrom.

B. The work required to be performed pursuant to this Work Order encompasses all the documents listed below. Please initial every line item to reflect acceptance. Please note, that execution of this subcontract PO must be executed by owner or authorized representative of Subcontractor. Please click on the Dropbox link to examine each document.



Power PDF Trial www.kofax.com

| DRAWINGS AND BID DOCUMENTS | | | |
|---|---|---|---|
| Link to all bid docs below. Confirmation of review and inclusion in contract: | | | |
| J22-056-50 Hudson Yards | | | |
| LINE # | REF # | DESCRIPTION | INITIAL BELOW |
| 1 | | 6/6/2022 50% Construction Documentation 100% Design Development 6/13/2022 Addendum #1 dated 07/09/22, 100% Construction Drawings 07/21/22 | |
| 2 | | Specifications dated 06/06/22 | |
| 3 | | Building Rules & Regulations | |
| 4 | | Project Insurance Requirements | |
| 5 | | Tax Included as per ST-124 Capital Improvement | |
| 6 | | Labor affiliation Open Shop (non-prevailing wage) | |

C. Schedule (Duration/Commencement/Completion):
   i) The Subcontractor shall employ persons of competence and skill to complete the project by **Refer to Attached Schedule**
   ii) The Subcontractors Work shall commence by around **8/1/2022**
   iii) Subcontractor shall complete work no later than **1/13/2023**
   iv) All timed durations still apply within the schedule even if dates changed.
   v)

D. Subcontractor is to complete all work as per the building rule and regulations.

E. Deliveries:
   i) All deliveries are to be as per the building rules and regulations.
   ii) Staging materials and deliveries to be reviewed and approved by the JC Elite site superintendent.
   iii) A minimum of seventy-two (72) hours' notice must be given to the JC Elite superintendent for all deliveries.

F. Manpower/Staffing:
   i) Subcontractor shall provide manpower for coordination and review with all other trades as required.
   ii) Subcontractor shall provide manpower for coordination with other trades for layouts, benchmarks and surveys.
   iii) Should Subcontractor fail to maintain required manpower to maintain JC Elite CO schedule, then JC Elite CO reserves the right to supplement Subcontractor's manpower to maintain schedule. JC Elite CO will back charge Subcontractor for labor expended.

G. Submittals:
   i) Subcontractor shall provide sample/submittal's, DDF shop drawings and all close out documents.
   ii) Time lost due to submittals and shop drawings not provided by Subcontractor within the time duration's specified will result in Subcontractor making up the time at their own expense.
   iii) Revised submittals (if required) are to be provided within 2-3 days of request. Time lost on schedule due to Subcontractor not having enough manpower or making the dates will result in



PowerPDF Trial www.kofax.com

Subcontractor having to provide additional man power at their own expense as required to catch up to the agreed to schedule.

H. Subcontractor shall consolidate and remove all debris as well as provide FDNY/burning permits as required, provide all scaffolding and lifts for Subcontractor's own work, including provide fire watch as necessary.

I. Any and all noisy work (drilling etc) need to be as per building rules and regulations.

J. Subcontractor shall provide fire stopping at all fire rated partitions (top bottom & sides as required), as well as to provide all access panels, and to furnish and install temp OSHA barricades as required, and maintain any requisite barricades.

K. Authorization to Proceed:

i) Before any additional work may be carried out, an "Authorization to Proceed" with a detailed scope of work description must be approved by "JC Elite Construction Services".

ii) Any work carried out without prior approval from "JC Elite Construction Services" will result in a forfeit of the right to expect receipt of payment, and any such applications for payment of this work will be deemed null and void.

L. Flow-Through Obligations:

The Contract Documents for this Subcontract consists of this Agreement and any Exhibits attached hereto, the agreement between the Owner and Contractor (the "Contract Documents"), the Conditions of the Contract between the Owner and Contractor (General, Supplementary and other Conditions), Drawings, Specifications, all Addenda issued prior to execution of the agreement between the Owner and Contractor, and all Modifications issued subsequent thereto. Subcontractor agrees to be bound to Contractor by all of the terms of the Agreement between Contractor and Owner and by the Contract Documents and to assume toward Contractor all of the obligations and the responsibilities pertaining to the Subcontractor's work that Contractor by those instruments assumes toward Owner and Subcontractor shall have the same rights and remedies against the Contractor as the Contractor has against the Owner, including but not limited to issues of Termination of the Contract Documents between the Owner and the Contractor and/or this Work Order between the Contractor and the Subcontractor.

1.6 Termination for Convenience:

The Contractor may, at its option, at any time, terminate the whole or part of this agreement for the convenience of the Contractor. Subcontractor agrees that upon any such termination, the Subcontractor's sole remedy shall be payment of full value for all work properly performed or materials delivered, plus reasonable profit thereon, less all payments Subcontractor has previously received on account of such work performed. Subcontractor agrees to waive all claims for damages, including lost or anticipated profits, arising from or related to any such termination by Contractor.

ARTICLE 2.0
INDEMNIFICATION

2.1 To the fullest extent permitted by law, the Subcontractor agrees to indemnify, defend and hold harmless the Contractor as well as all parties listed as additional insureds, their officers, directors, agents, employees and partners (hereafter collectively "Indemnitees") from any and all claims, suits, damages, liabilities, professional fees, including attorneys' fees, costs, court costs, expenses and disbursements related to death, personal injuries or property damage (including loss of use thereof) brought against any of the Indemnitees by any person or entity, arising out of or in connection with or as a result or consequence of the performance of the Work of the Subcontractor, as well as any additional work, extra work or add-on work, whether or not caused in whole or in part by the Subcontractor or any person or entity employed, either directly or indirectly by the Subcontractor including any Subcontractors thereof and their employees. The parties expressly agree that this indemnification agreement contemplates 1) full indemnity in the event of liability imposed against the Indemnitees without negligence; and 2) partial indemnity in the event of any actual negligence on the part of the Indemnitees either causing or contributing to the underlying claim which negligence is expressly excepted from the Subcontractor's obligation to indemnify. Attorneys' fees, court costs, expenses and disbursements shall be defined without limit to include those fees, costs, etc. incurred in defending the underlying claim and those fees, costs, etc. incurred in connection with the enforcement of this Subcontract Agreement. Indemnification under this Agreement shall operate whether or not Contractor has placed and maintained the insurance required under this agreement. The Subcontractor shall cause all subcontract agreements it enters into to include this indemnification clause so as to ensure that Contractor





Power PDF Trial www.kofax.com

and all Indemnitees hereunder shall have the same protection from sub-Subcontractors as is afforded by the Subcontractor.

2.2 In claims against any person or entity indemnified under this Section 2.1 by an employee of the Subcontractor, the Subcontractor's Sub-Subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Section 2.1 shall not be limited by a limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor or the Subcontractor's Sub-Subcontractors under workers' compensation acts, disability benefit acts or other employee benefit acts.

ARTICLE 3.0
INSURANCE

3.1 Types of Insurance and Limits of Liability:
The Subcontractor shall purchase and maintain insurance of the following types of coverage and limits of liability as will protect the Subcontractor from claims that may arise out of, or result from, the Subcontractor's operations and completed operations under the Subcontract:

A. Workers Compensation and Employers Liability with limits of at least $1million. *See Section 3.6, Insurance Coverage Details & Requirements.*
B. GL occurrence form with limits not less than 1 mil/2mil/1 mil to include per project aggregate, Premises Operations, Products/Completed Operations, Full/Blanket Contractual, Personal Injury & Advertising Liability. *See Section 3.6, Insurance Coverage Details & Requirements.*
C. Commercial Umbrella with limits of at least $5 million. *See Section 3.6, Insurance Coverage Details & Requirements.*
D. Auto Liability with limits of at least $1 million. *See Section 3.6, Insurance Coverage Details & Requirements.*

3.2 Coverages:
Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from the date of commencement of the Subcontractor's Work until the date of final payment and termination of any coverage required to be maintained after final payment to the Subcontractor, and, with respect to the Subcontractor's completed operations coverage, until the expiration of the period for correction of work or for such other period for maintenance of completed operations coverage as specified in the Prime Contract.

3.3 Certificates of Insurance:
Certificates of Insurance acceptable to the Contractor shall be filed with the Contractor prior to commencement of the Subcontractor's Work. These certificates and the insurance policies required by this section shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Contractor. If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final application for payment. If any information concerning reduction of coverage is not furnished by the insurer, it shall be furnished by the Subcontractor with reasonable promptness according to the Subcontractor's information and belief.

3.4 Commercial Liability:
The Subcontractor shall cause the commercial liability coverage to include: the Contractor, the Owner, and their agents as additional insureds on a Primary and Non-Contributory basis for both ongoing and completed operations by the Sub-Contractor and any sub-Subcontractors GL, Excess/Umbrella and AL policies. *See Section 3.6, Insurance Coverage Details & Requirements.*

3.5 Waivers of Subrogation:
The Contractor and Subcontractor waive all rights against (1) each other and any of their Subcontractors, Sub-Subcontractors, agents and employee, each of the other, and (2) the owner, the Architect, the Architect's consultants, separate contractors, and any of their Subcontractors, sub-Subcontractors, agents and employees for damages caused by fire or other perils to the extent covered by property insurance provided under the Contract or other property insurance applicable to the work except such rights as they may have to proceeds of such insurance





Power PDF Trial www.kofax.com

held by the Owner as fiduciary. The Subcontractor shall require of the Subcontractor's Sub-Subcontractors, agents and employees, by appropriate agreements, written where legally required for validity, similar waivers in favor of other parties enumerated herein. If possible, the policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

<u>3.6 Insurance Coverage Details & Requirements:</u>
The Subcontractor, at its own expense, shall obtain and maintain in full force and effect, without interruption during the term of the agreement, the following minimum levels of insurance:

A. Workers' Compensation insurance covering the legal liability of the Contractor and its Subcontractors under the applicable workers' compensation or occupational disease laws for claims for personal injuries and death resulting there from to the Contractor and its Subcontractor's employees. The Subcontractor shall also obtain Employers Liability Insurance limits of at least $1,000,000 each accident for bodily injury by accident and $1,000,000 each employee for injury by disease. Certificates of insurance must include a waiver of subrogation in favor of Contractor. Where applicable, U.S. Longshore and Harborworkers Compensation Act Endorsement shall be attached to the policy. Where applicable, the Maritime Coverage Endorsement shall be attached to the policy.

B. Commercial General Liability (CGL) insurance covering the legal liability (including liability assumed contractually, whether incidental or not) of the Subcontractor who may be engaged in the services, for claims for personal injuries (including death) and property damage resulting there from arising out of the services to be performed by the Subcontractor, in an amount not less than $1,000,000 each occurrence and $2,000,000 Annual Aggregate and $1,000,000 Products/Completed Operations aggregate limit.
   - i) If the CGL coverage contains a General Aggregate Limit, such General Aggregate shall apply separately to each project.
   - ii) CGL coverage shall be written on ISO Occurrence form CG 00 01 10/01 or a substitute form providing equivalent coverage and shall cover liability arising from premises, operations, independent contractors, products-completed operations, residential projects (if applicable) and personal and advertising injury.
   - iii) Contractor, Owner and all other parties who Contractor is required to name as additional insureds by any contract, shall be included as insureds on the CGL, using ISO Additional Insured Endorsement CG 20 10 (11 85) or a combination of CG 20 10 (10 01) & CG 20 37 (10 01), or an endorsement providing equivalent or broader coverage to the additional insureds. The coverage provided to the additional insureds under the policy issued to the Subcontractor shall be at least as broad as the coverage provided to the Subcontractor under the policy. Coverage for the additional insureds shall apply as primary and non-contributing insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the additional insureds.
   - iv) Subcontractor shall maintain CGL coverage for itself and all additional insureds for the duration of the project and maintain Completed Operations coverage for itself and each additional insured for at least 3 years after completion of the Work.
   - v) CGL coverage shall not have exclusions for residential projects, territorial limitations, bodily injury to employees, work at heights or any other exclusion deemed unacceptable to the Contractor.
   - vi) Subcontractors' s subs shall indemnify the Contractor & Owners.

C. Commercial Umbrella with limits of at least $5 million. Commercial General Liability insurance shall be obtained and shall include broad form contractual liability coverage, products/completed operations, cross liability, severability of interest and broad form property damage (if required).
   - i) Umbrella coverage must include as insureds all entities that are additional insureds on the CGL.
   - ii) Umbrella coverage for such additional insureds shall apply as primary and non-contributing insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the additional insured other than the CGL, Auto Liability and Employers Liability coverages maintained by the Subcontractor.



PowerPDF Trial www.Kofax.com

ELITE CONSTRUCTION

iii) Umbrella coverage shall not have exclusions for residential projects, territorial limitations, bodily injury to employees, work at heights or any other exclusion deemed unacceptable to the Contractor.
iv) Umbrella should be Primary & Non Contributing
v) Umbrella should have a Per Project Aggregate

D. Automobile Liability insurance covering the legal liability (including liability assumed contractually, whether incidental or not) of the Subcontractor who may be engaged in the services, for claims for personal injuries and death resulting there from and for property belonging to other than the Subcontractor caused by highway licensed vehicles of or used by the Subcontractor in an amount not less than: (i) $1,000,000 for any one person; (ii) $1,000,000 for bodily injury for any one occurrence; and (iii) $1,000,000 for property damage for any one occurrence. Automobile Liability insurance shall provide coverage for owned, hired or non-owned automobile or other automotive equipment and Contractor and the Owner shall be named as an additional insured on such policy.

E. The Subcontractor's insurance coverage shall be primary insurance as respects work on this project for Contractor the Owner, its directors, officers, and employees. Any insurance or self-insurance maintained by Contractor shall be excess of the Subcontractor's insurance.

F. The Subcontractor shall not sublet any part of its work without written approval from the Owner or Contractor. The Subcontractor shall not sublet any part of its work without assuming full responsibility for requiring similar insurance from its subcontractors and shall submit satisfactory evidence to that effect to the Contractor. Each such insurance policy of the sub-subcontractor, except the Workers Compensation Policy, shall include the Owner, the Contractor and all other parties who Contractor is required to name as additional insureds by any contract as an additional insured.

G. The Subcontractor hereby waives and relinquishes any right of subrogation against the Owner, Contractor and its agents, representatives, directors, employees, and affiliates for recovery of damages to the extent these damages are covered by commercial general liability, commercial umbrella liability, business auto liability or workers compensation and employers liability insurance maintained per requirements stated in this Article or under any State or Federal Workers' Compensation or Employer's Liability Act. The required insurance policies shall contain a provision that coverage afforded under the policies will not be canceled, allowed to expire or material change in any required policy until at least 30 days prior written notice has been given to the Contractor. To the extent that the Subcontractor utilizes deductibles in conjunction with the insurance required by this agreement, all deductible expenses will be assumed by the Subcontractor.

H. Prior to commencing the work, the Subcontractor shall submit to the Contractor a certificate of insurance, a copy of the Additional Insured Endorsement and a copy of the applicable Other Insurance clause that is part of the Subcontractor's

Power PDF Trial www.kofax.com

ARTICLE 4.0
COVID-19 REQUIREMENTS

The Contractor has referenced their COVID action plan in section 1.5 Subcontractor's Obligations. The Contractor will only be providing hand sanitizer for their employees and visitors. Subcontractors are required to provide their own COVID-19 action plan and will be responsible for supplying hand sanitizer, disinfecting materials, face masks, face shields, etc. that comply with CDC guidelines, to their employees. This plan must be submitted to and approved by the Contractor prior to mobilization and site occupancy by the Subcontractor.

ARTICLE 5.0
SIGNATURES

Contractor Name: JC ELITE CONSTRUCTION SERVICES, LLC Contractor

ELITE CONSTRUCTION

James Frawley 8 / 31 / 2022
(Signature) (Date)

JAMES FRAWLEY - PROJECT MANAGER
(Printed Name and Title)

Subcontractor Name LMEC Electric Subcontractor

thomas foronjy 8 / 23 / 2022
(Signature) (Date)

Thomas Foronjy President
(Printed Name and Title)

Power PDF Trial
www.kofax.com

ELITE CONSTRUCTION

**Project: 50 Hudson Yards L64 Fit-Out**

**Location: 50 Hudson Yards**

**Proposal # B22-054**

| | | | | | |
|---|---|---|---|---|---|
| | ELECTRIC | | | | |
| | **Company Name:** | LMEC Electric | | | |
| | **Phone Number:** | 718-366-0394 | | | |
| | **Contact:** | Tom Foronjy | | | |
| | **Enter "Y" if item is included in base bid or enter added value** | | | | |
| 1 | | **$405,897** | | | |
| 2 | **Contract Documents:** | | | | |
| 3 | Construction Schedule dated 06/06/22 | Yes | | | |
| 3 | Drawings dated 6/6/2022 50% Construction Documentation 100% Design Development 6/13/2022 Addendum #1 dated 07/09/22 | Yes | | | |
| 4 | Building Rules & Regulations & Exhibit I-2 Construction Rules | Yes | | | |
| 5 | **General Requirements** | | | | |
| 6 | Insurance Requirements | Yes | | | |
| 7 | Tax Included as per ST-124 Capital Improvement | Yes | | | |
| 8 | Labor affilliation Open Shop (non prevailing wage) | Yes | | | |
| 9 | LEED Requirements | N/A | | | |
| 9 | **General Scope Items:** | | | | |
| 10 | Complete all work as per the drawings and notes as referenced in contract. | Yes | | | |
| 11 | Subcontractor shall provide full submittal packages, including shop drawings, no more than 10 (ten) days after issuance of PO. A submittal log shall be issued within 3 days of award indicating dates of when submittals will be issued. Log shall include delivery times of each specified material. | Yes | | | |
| 12 | Subcontractor shall provide all required samples of materials for approval. | Yes | | | |
| 13 | If a Change Order is requested by JC Elite, then this subcontractor is to provide an itemized CO to JC Elite including a clear and concise description, breakdown of labor and material, material back up quotes, photos of the work proposed and a drawing indicating where the work is to be performed within 48 hours. Mark ups are 10% for general conditions and 5 % for overhead and profit. | Yes | | | |

Power PDF Trial www.kofax.com

ELITE CONSTRUCTION

**Project: 50 Hudson Yards L64 Fit-Out**

**Location: 50 Hudson Yards**

**Proposal # B22-054**

| | | | | | |
|---|---|---|---|---|---|
| | ELECTRIC | | | | |
| | **Company Name:** | LMEC Electric | | | |
| | **Phone Number:** | 718-366-0394 | | | |
| | **Contact:** | Tom Foronjy | | | |
| | **Enter "Y" if item is included in base bid or enter added value** | | | | |
| 14 | If Time and Material is required to perform CO work then a ticket shall be written to perform the work which must be signed by site super and submitted to JC Elite as a CO within 48 hours. | Yes | | | |
| 15 | JC Elite will issue a directive to this subcontractor to proceed with CO work on a Not to Exceed basis (NTE) if time is of the essence without engaging in a formal CO process. | Yes | | | |
| 16 | Subcontractor has visited the site and seen all areas where work is to be performed as well as reviewed the logistics plans showing areas of work. Subcontractor understands the space constraints the project has being an operating retail establishment. Storage of tools, equipment, materials and new product to be installed will be extremely limited and the necessary accommodations should be accounted for. There will be no claim for additional work due to existing conditions, regulatory requirements, etc. | Yes | | | |
| 14 | Subcontractor will provide assistance in coordination and sequencing as necessary for JC Elite to coordinate scope of work as it relates to the property, structure and other work being performed on the premises. | Yes | | | |
| 15 | Subcontractor shall maintain all of their tools and materials on the project site and abide by all site housekeeping requirements. | Yes | | | |
| 15 | Subcontractor to include all protection at work areas as necessary to protect their work, property, the public and newly installed work. | Yes | | | |
| 16 | All required signage, warnings that shall be posted, etc. shall be furnished and install by this Subcontractor. | Yes | | | |
| 17 | Subcontractor to include all applicable personnel, union or otherwise, for duration of work in order to meet project deadlines. | Yes | | | |
| 18 | Subcontractor shall comply with all federal and local laws regarding noise control. | Yes | | | |
| 18 | Subcontractor to include power and manual tools as necessary to perform the scope | Yes | | | |
| 19 | Subcontractor shall be responsible for, but not limited to, the following procedures to be established and implemented for precaution against fire. | Yes | | | |

Power PDF Trial www.kofax.com

ELITE CONSTRUCTION

**Project: 50 Hudson Yards L64 Fit-Out**

**Location: 50 Hudson Yards**

**Proposal # B22-054**

| | | | | | |
|---|---|---|---|---|---|
| | ELECTRIC | | | | |
| | **Company Name:** | LMEC Electric | | | |
| | **Phone Number:** | 718-366-0394 | | | |
| | **Contact:** | Tom Foronjy | | | |
| | **Enter "Y" if item is included in base bid or enter added value** | | | | |
| 20 | Subcontractor shall where necessary, furnish and maintain fire extinguishers in sufficient numbers and size. | Yes | | | |
| 21 | All subcontractor personnel must meet all current NYC and OSHA training/safety requirements and carry valid OSHA cards. | Yes | | | |
| 22 | Subcontractor shall secure all tools and materials from weather and theft while on site. | Yes | | | |
| 23 | Subcontractor is to supply JC Elite with current labor and unit rates as requested below. | Yes | | | |
| 24 | The site shall not be used as a transfer site for other project's material or debris. | Yes | | | |
| 25 | Subcontractor must provide a full time competent site foreman, fluent in English, to oversee their scope of work. | Yes | | | |
| 26 | Subcontractor will center pile all of their debris for removal by others. | Yes | | | |
| 27 | Subcontractor to submit their site safety manual for review by JC Elite. | Yes | | | |
| 28 | Subcontractor to review and follow JC Elite's safety manual. Please note that only platform ladders are to be utilized and all material must be on rolling carts. GFI protected extension cords are to be utilized only. | Yes | | | |
| 29 | Subcontractor includes proper jurisdictional manning of equipment, compressors, standby charges . Include standby if claimed by the Subcontractor's personnel. | Yes | | | |
| 30 | Subcontractor will abide by all standard federal, state & local codes. | Yes | | | |
| 31 | Subcontractor to Include all expected labor rate increases for the duration of the project. | Yes | | | |
| 32 | Subcontractor to have project manager and foreman attend weekly subcontractor coordination meetings. | Yes | | | |
| 33 | All deliveries before 8AM unless prior authorization stating otherwise is granted. | Yes | | | |
| 34 | Upon receipt of a punch list from JC Elite, all corrective work must be completed in five (5) days. | Yes | | | |

Power PDF Trial
www.kdlax.com

**Project: 50 Hudson Yards L64 Fit-Out**

**Location: 50 Hudson Yards**

**Proposal # B22-054**

| | | | | | |
|---|---|---|---|---|---|
| | ELECTRIC | | | | |
| | **Company Name:** | LMEC Electric | | | |
| | **Phone Number:** | 718-366-0394 | | | |
| | **Contact:** | Tom Foronjy | | | |
| | **Enter "Y" if item is included in base bid or enter added value** | | | | |
| 35 | Upon completion of the project, a close out package to be submitted within thirty (30) days. All as built must be submitted in pdf and cad and must reflect the actual installations of work installed. | Yes | | | |
| 26 | Subcontractors responsible for all bid documents & specifications issued for this project - not just the trade specific drawings. | Yes | | | |
| 27 | Complete punch list after tenant has moved into the space. Trades are responsible for completing their item on overtime, including Saturdays. | Yes | | | |
| 27 | Subcontractor shall comply with OSHA requirements | Yes | | | |
| 28 | Subcontractor shall comply with JC Elite safety program/ manual. Please request if you are not in possession. | Yes | | | |
| 28 | Any work that will affect the tenants services on the other floors and/or the buildings operations to be completed on overtime. | Yes | | | |
| 29 | All service shutdowns (fa, water, sprinkler etc.) to be scheduled with building management, subcontractor is required to get approval in writing before commencement of work. | Yes | | | |
| 29 | Subcontractor shall hold safety tool-box talks once a week and document the same. | Yes | | | |
| 30 | Subcontractor shall have a competent foreman/forewoman on site at all times of work. | Yes | | | |
| 30 | Subcontractor shall wear hard hats and high visibility vest at all times. | Yes | | | |
| 31 | Subcontractor is to provide lead times for all materials at time of bid submission. | Yes | | | |
| 31 | Attic stock per the drawings. - No exceptions | Yes | | | |
| 32 | Subcontractor is to provide hooks ups if needed. | Yes | | | |
| 32 | Subcontractor is to provide all warranties. (specify durations) | Yes | | | |
| 33 | Subcontractor is to provide close out package within 30 days of project completion. | Yes | | | |
| 33 | Subcontractor is to provide as builts upon completion of work. (pdf & cad) | Yes | | | |

Power PDF Trial www.kofax.com

ELITE CONSTRUCTION

**Project: 50 Hudson Yards L64 Fit-Out**

**Location: 50 Hudson Yards**

**Proposal # B22-054**

| | | | | | |
|---|---|---|---|---|---|
| | **ELECTRIC** | | | | |
| | **Company Name:** | LMEC Electric | | | |
| | **Phone Number:** | 718-366-0394 | | | |
| | **Contact:** | Tom Foronjy | | | |
| | **Enter "Y" if item is included in base bid or enter added value** | | | | |
| 34 | **Safety Adherence:** | | | | |
| 34 | All subcontractor personal must complete a site specific safety orientation with JC Elite prior to commencing work on site. | Yes | | | |
| 35 | Subcontractor to comply with the JC Elite safety manual. | Yes | | | |
| 36 | Subcontractor responsible to create and implement a respirable cyrstalline silica exposure control plan for their respective work, as per OSHA. | Yes | | | |
| 37 | Subcontractor to comply with all applicable federal, state and local laws, codes and regulations, including but not limited to OSHA, NYC DOB, NYC DOT, FDNY, DEP and EPA. | Yes | | | |
| 38 | Subcontractor responsible to enforce the ladders last program with respective workers. Alternative work platforms may include but shall not be limited to platform ladders, podium ladders, scaffolds and man lifts to be used instead of A-Frame Ladders. | Yes | | | |
| 39 | All subcontractors to comply with the LLC 196 Safety Training Law for respective workers. | Yes | | | |
| 37 | Subcontractor responsible to create a site specific fall protection plan to ensure 100% tie off at all times when exposed to a fall hazard of 6 Foot or more. Copies must be submitted to JC Elite. | Yes | | | |
| 38 | A current NYC DOB approved 4 hour supported scaffold user card is mandatory from each individual that uses a supported scaffold on site. | Yes | | | |
| 38 | Mandatory fall protection required from each subcontractor for any work that exposes workers to a fall hazard of 6 Feet or greater. This worker tie off rule is mandatory for all trades and workers. | Yes | | | |
| 39 | Subcontractor responsible for any and all costs due to stop work orders or violations arising out of the subcontractor's work. | Yes | | | |
| 40 | Subcontractor responsible to ensure respective employee's safety compliance, safety performance, supervision, direction and discipline. | Yes | | | |

PowerPDF Trial
www.kofax.com

ELITE CONSTRUCTION

**Project: 50 Hudson Yards L64 Fit-Out**

**Location: 50 Hudson Yards**

**Proposal # B22-054**

| | | | | | |
|---|---|---|---|---|---|
| | ELECTRIC | ◇ | | | |
| | **Company Name:** | LMEC Electric | | | |
| | **Phone Number:** | 718-366-0394 | | | |
| | **Contact:** | Tom Foronjy | | | |
| | **Enter "Y" if item is included in base bid or enter added value** | | | | |
| 41 | Subcontractor responsible to enforce worker compliance with mandatory PPE, including but not limited to hard hats, work boots, safety glasses and high visibility clothing, including but not limited to high visibility and reflective vests, jackets or shirts. | Yes | | | |
| 42 | Subcontractor foreman to complete a pre task plan with respective employees every day prior to beginning work for each shift. Pre task plans must identify the steps involved in the tasks for the day, the potential hazards for each step and the control measures that will be implemented for each hazard. Each worker must review and sign the pre task plan each day. | Yes | | | |
| 43 | Subcontractor foreman to review at least one toolbox talk each week with respective workers. Toolbox talks to be signed by each subcontractor worker and copies provide to JC Elite each week. | Yes | | | |
| 44 | All ladders must be inspected by respective subcontractor competent person and deemed safe prior to use. Damaged ladders shall be removed from service immediately and removed from the jobsite by the subcontractor. | Yes | | | |
| 45 | Subcontractor responsible for inspection of each scaffold by a competent person prior to use by respective workers. Scaffold inspection checklists to be completed each day by a competent person from each subcontractor, prior to use. | Yes | | | |
| 42 | Subcontractor responsible to maintain a current binder of safety data sheets for all materials and chemicals being used on site. Subcontractor must provide hard copies of safety data sheets to JC Elite. | Yes | | | |
| 43 | **Trade Specific** | | | | |
| 43 | Confirm deposit not required for material (If no, %?) | Yes | | | |
| 44 | Unit prices and labor rates provided | Yes | | | |
| 44 | Confirm lead times meet schedule, if not provide expediting | Yes | | | |
| 45 | Acknowledgement of the loading dock and services allowing access to the floors. Elevator will be shared use with all trades. Downtime may occur and flagmen are required | $6,600 | | | |
| 46 | Provide daily reports to JC Elite super | Yes | | | |

PowerPDF Trial www.kolax.com

**Project: 50 Hudson Yards L64 Fit-Out**

**Location: 50 Hudson Yards**

**Proposal # B22-054**

| | | | | | |
|---|---|---|---|---|---|
| | ELECTRIC | | | | |
| | **Company Name:** | LMEC Electric | | | |
| | **Phone Number:** | 718-366-0394 | | | |
| | **Contact:** | Tom Foronjy | | | |
| | **Enter "Y" if item is included in base bid or enter added value** | | | | |
| 47 | All deliveries are to be made on overtime especially large deliveries (before 8:00am and including Saturdays) | Yes | | | |
| 48 | Manpower & overtime if necessary to meet JC Elite schedule | Yes | | | |
| 49 | Provide your own scaffolding and lifts as required for the scope of work - general contractor will not supply any ladders/ scaffolding or lifts | Yes | | | |
| 50 | All subcontractors are responsible for chopping, coring & cutting relating to their own work | Yes | | | |
| 51 | Complete all fire stopping of your own work, after own slab penetrations or penetrations in demising wall - fire stopping material to be approved by rcg prior to work | Yes | | | |
| 52 | Field coordination with all other trades | Yes | | | |
| 53 | Include all protection pertaining to your trade | Yes | | | |
| 54 | Tie-in to building system (overtime or before 8am as per the building rules & regs) | Yes | | | |
| 55 | Provide cost for two team days plus materials to resolve meps hits and relocates | Yes | | | |
| 56 | Provide shop drawings | Yes | | | |
| 57 | Provide as built drawings | Yes | | | |
| 58 | Coordinated drawings for conduit runs to flag conflicts | $2,254 | | | |
| 59 | Furnish and install all fire alarm work. | ($33,450) | | | |
| 60 | Provide power to all fa equipment | Yes | | | |
| 61 | Furnish and install all new power | Yes | | | |
| 62 | Furnish and install all new outlets | Yes | | | |
| 63 | Furnish and install all switches | Yes | | | |
| 63 | Furnish and install all sensors as required | Yes | | | |
| 64 | Complete all chopping and infill for coring | Yes | | | |
| 65 | Install entire lighting/ controls package as per the plans including the em lighting, inverters and exit signs | Yes | | | |
| 66 | Receive delivery of all light fixtures at loading dock, transport to floor and verify that order is complete. store safely. If it is not done subcontractor will be responsible to replace/ pay for missing fixtures | Yes | | | |

PowerPDF Trial
www.kofax.com

**Project: 50 Hudson Yards L64 Fit-Out**

**Location: 50 Hudson Yards**

**Proposal # B22-054**

| | | | | | |
|---|---|---|---|---|---|
| | ELECTRIC | | | | |
| | **Company Name:** | LMEC Electric | | | |
| | **Phone Number:** | 718-366-0394 | | | |
| | **Contact:** | Tom Foronjy | | | |
| | **Enter "Y" if item is included in base bid or enter added value** | | | | |
| 66 | Include for a lighting foreman and point person for all deliveries and work associated with the lighting and controls | Yes | | | |
| 67 | During construction provide and maintain temp light and power throughout | Yes | | | |
| 68 | Include adding and relocating temp light and power as needed as construction progresses | Yes | | | |
| 69 | Provide all wiring for controls | Yes | | | |
| 70 | Furnish and install all new panels | Yes | | | |
| 71 | Provide cost for two team days to resolve meps hits and relocates | Yes | | | |
| 72 | Install lighting controls supply and install by subcontractor | Yes | | | |
| 73 | Furnish and install conduits/stub-ups with back boxes for all low voltage (tele-data, av, security, etc.) - including all work on av drawings | Yes | | | |
| 74 | Furnish and install conduits and back boxes for all t-stats | Yes | | | |
| 75 | Furnish and install all floor boxes | Yes | | | |
| 76 | Furnish and install all stub-ups | Yes | | | |
| 77 | Provide power to all HVAC equipment | Yes | | | |
| 78 | Subcontractor to have dedicated laborers to clean up all own trade debris/ material. Laborers must be named and maintained throughout construction once there is so much as a single electrician on site. | Yes | | | |
| 79 | Install all pantry appliances furnished by others - receive and bring to the floor deliveries | Yes | | | |
| 80 | Furnish and install blanks plates at locations where devices/outlets are removed | Yes | | | |
| 81 | Conduit for all LV/ EMT/FA in open areas | Yes | | | |
| 82 | **Project-Specific Scope Included But Not Limited To** | | | | |
| 83 | Conduit for power and data | Yes | | | |
| 84 | Junction boxes for motorized shades | Yes | | | |
| 85 | Legrand Omnibox 880 and Legrand Evolution 6ATCFF approved equal floor box | Yes | | | |

Power PDF Trial www.kofax.com

ELITE CONSTRUCTION

**Project: 50 Hudson Yards L64 Fit-Out**

**Location: 50 Hudson Yards**

**Proposal # B22-054**

| | | | | | |
|---|---|---|---|---|---|
| | ELECTRIC | | | | |
| | **Company Name:** | LMEC Electric | | | |
| | **Phone Number:** | 718-366-0394 | | | |
| | **Contact:** | Tom Foronjy | | | |
| | **Enter "Y" if item is included in base bid or enter added value** | | | | |
| 86 | Coordination of ceiling mounted devices | Yes | | | |
| 87 | Transfers relays for lighting as required for lighting zones | Yes | | | |
| 88 | Installation of sub-meters supplied by Landlord | $3,300 | | | |
| 89 | Branch and Switchboard electrical panels as per E-600 | Yes | | | |
| 90 | MC cable and branch wiring | Yes | | | |
| 91 | Power to water heater | Yes | | | |
| 92 | Security back boxes | Yes | | | |
| 93 | Power and back boxes for J Boxes | Yes | | | |
| 94 | Power to mechanical equipment | Yes | | | |
| 95 | Integration lighting to reception desk | $6,144 | | | |
| 96 | 2" conduit from conduit from core tenant tech room to Interior IDF room | $3,300 | | | |
| 97 | Light level and adjustments | $6,000 | | | |
| 98 | Field coordination with Lutron and Lighting Consultant | Yes | | | |
| 99 | E-001 General Notes and Specifications | Yes | | | |
| 100 | **Schedule Milestones** | | | | |
| 101 | Roughing of Power - 15 Days | | | | |
| 102 | Roughing of Lighting - 15 Days | | | | |
| 103 | Roughing of FA - 15 Days | | | | |
| 104 | Install SR Lighting - 10 Days | | | | |
| 105 | Install ACT Lighting - 15 Days | | | | |
| 106 | Install ACT Lighting - 15 Days | | | | |
| 107 | | | | | |
| 108 | **Initial Leveled Bid** | **$400,045** | | | |
| 109 | | | | | |

Power PDF Trial
www.kofax.com

ELITE CONSTRUCTION

**Project: 50 Hudson Yards L64 Fit-Out**

**Location: 50 Hudson Yards**

**Proposal # B22-054**

| | | | | |
|---|---|---|---|---|
| | **ELECTRIC** | | | |
| | **Company Name:** | LMEC Electric | | |
| | **Phone Number:** | 718-366-0394 | | |
| | **Contact:** | Tom Foronjy | | |
| | **Enter "Y" if item is included in base bid or enter added value** | | | |
| 110 | **FINAL AMOUNT** | **$400,045** | | |
| 111 | **Recommendation** | **$400,045** | | |
| 137 | **Negotiated Final Price** | **$397,000** | | |
| 112 | | | | |
| 113 | Labor Cost | $ 248,027.90 | | |
| 114 | Material Cost | $ 152,017.10 | $ - | $ - |
| 115 | | | | |
| 116 | ***Unit Cost*** | | | |
| 117 | Foreman | $ 98.00 | $ 147.00 | $ 49.00 |
| 118 | Journeyman | $ 89.00 | $ 133.50 | $ 44.50 |
| 119 | Apprentice | $ 79.00 | $ 118.50 | $ 39.50 |
| 120 | ***Long Leads*** | | | |
| 121 | Transfomers, Breakers and Panels | **24 Weeks** | | |

| | |
|---|---|
| **Signed** | |
| **Dated** | |

Power PDF Trial
www.kofax.com

109546

# NOTICE UNDER MECHANIC'S LIEN LAW

To the Clerk of the County of New York and all others whom it may concern:

ORIGINAL

**Please Take Notice,** that LMEC Electric, Inc.

as lienor(s) have and claim a lien on the real property hereinafter described as follows:

(1) The names and residences of the lienor(s) are LMEC Electric, Inc.
62-26 Myrtle Avenue - Suite 107
Glendale, NY 11385

being a Corporation Duly organized and existing under and by virtue of the laws of the State of New York

(2) The owner of the real property is 50 HYMC Owner LLC
and the interest of the owner as far as known to the lienor(s) is Fee Simple

(3) The name of the party by whom the lienor(s) was (were) employed is:
JC Elite Construction Services, LLC

The name of the party to whom the lienor(s) furnished or is (are) to furnish materials or for whom the lienor(s) performed or is (are) to perform professional services is:
JC Elite Construction Services, LLC

(4) The labor performed and material furnished were Supplied and Installed Electrical Materials, Etc.

FILED COUNTY CLERK N.Y. COUNTY
2024 JUL 24 A 9:18

Block:
705

Lot:
39

The materials actually manufactured for but not delivered to the real property are N/A

The agreed price and value of the labor performed and value of the material furnished is $467,859.03
The agreed price and value of the material actually mfd. for but not delivered to the real prop. is
The agreed fee for professional services is

Total agreed price and value $467,859.03

(5) The amount unpaid to the lienor(s) for said labor performed and said material furnished is $66,602.88
The amount unpaid to lienor(s) for material actually mfd. for but not delivered to the real prop. is

Total amount unpaid $66,602.88

The total amount claimed for which this lien is filed is $66,602.88
(6) The time when the first item of work was performed was 9/15/2022
The time when the first item of material was furnished was 9/15/2022
The time when the last item of work was performed was 4/23/2024
The time when the last item of material was furnished was 4/23/2024

(7) The property subject to the lien is situated in New York, County of New York, State of New York
Known as: 50 Hudson Yards "64FL"
New York, NY

That said labor and materials were performed and furnished for and used, and that the professional services rendered were used, in the improvement of the real property hereinbefore described.

Dated July 24, 2024

**Mark Nash, as Agent of**
**LMEC Electric, Inc.**
**For Filing Purposes Only**

Power PDF Trial
www.kofax.com

109546

ORIGINAL

STATE OF NEW YORK, COUNTY OF INDIVIDUAL OR PARTNER

being duly sworn, says that deponent is of the co-partnership named in the within notice of lien and the lienor(s) mentioned in the foregoing notice of lien; that deponent has read the said notice and knows the contents thereof, and that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters deponent believes it to be true.

STATE OF NEW YORK, COUNTY OF New York CORPORATION

Mark Nash being duly sworn, says

that deponent is the Agent of LMEC Electric, Inc.
herein, that deponent has read the foregoing notice of lien and the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters deponent believes it to be true. The reason why this verification is made by deponent is that deponent is an officer,
to wit, the Agent of LMEC Electric, Inc.
which is a Domestic corporation, and deponent is familiar with circumstances herein based upon information provided.

**Mark Nash , as Agent of**
**LMEC Electric, Inc.**
**For Filing Purposes Only**

State of New York

County of Nassau

On the 24 day of July in the year 2024, before me, the undersigned, a Notary Public in and for said State, personally appeared Mark Nash, Agent personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which individual acted, executed the instrument.

Signature of Notary Public

LALLCHAN HARDEO
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01HA6401618
Qualified in Queens County
Commission Expires December 16, 2027

Power PDF Trial
www.kofax.com

109546

# Affidavit of Service by Certified Mail

ORIGINAL

The undersigned, being duly sworn, deposes and says that deponent is over 18 years of age and on 7/24/2024 the undersigned served the within Notice of Lien on

50 HYMC Owner LLC
c/o The Related Companies
30 Columbus Circle Att: Andrew Cantor
New York, NY 10001

50 HYMC Owner LLC
c/o Related Companies
30 Hudson Yards Att: Richard O'Toole, Esq.
New York, NY 10001

JC Elite Construction Services, LLC
Att: Michael Clarke
211 East 43rd Street - Suite 1600
New York, NY 10017

50 HYMC Owner LLC
c/o Related Companies
30 Hudson Yards Att: Jeff Blau
New York, NY 10001

*Premises known as:*
50 Hudson Yards "64FL"
New York, NY
*Block:* 705
*Lot:* 39

Lienor: LMEC Electric, Inc.
Lien Amount: $66,602.88
Lien Filed: 7/24/24

FILED
COUNTY CLERK
N.Y. COUNTY
2024 JUL 24 A 9:18

by depositing a true copy of same, enclosed in a certified mail, postpaid, properly addressed wrapper, in an official depository of the United State Postal Service in New York State.

Mark Nash

State of New York

County of Nassau

On the 24 day of July in the year 2024 , before me, the undersigned, a Notary Public in and for said State, personally appeared Mark Nash personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which individual acted, executed the instrument.

Signature of Notary Public

LALLCHAN HARDEO
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01HA6401618
Qualified in Queens County
Commission Expires December 16, 2027

Power PDF Trial
www.kofax.com

# Mechanic's Lien

*Claimant:* LMEC Electric, Inc.

62-26 Myrtle Avenue - Suite 107
Glendale, NY 11385
718-366-0394
Thomas Foronjy , President

*To:*

50 HYMC Owner LLC
c/o The Related Companies
30 Columbus Circle Att: Andrew Cantor
New York, NY 10001

JC Elite Construction Services, LLC
Att: Michael Clarke
211 East 43rd Street - Suite 1600
New York, NY 10017

50 HYMC Owner LLC
c/o Related Companies
30 Hudson Yards Att: Jeff Blau
New York, NY 10001

50 HYMC Owner LLC
c/o Related Companies
30 Hudson Yards Att: Richard O'Toole, Esq.
New York, NY 10001

# Notice of Lien

*Amount* $66,602.88

*Premises known as*

50 Hudson Yards "64FL"
New York, NY

*Block:* 705
*Lot:* 39

New York City Industrial Development Agency
Att: Legal Dept.
1 Liberty Plaza
New York, NY 10006

Gibson Dunn & Crutcher LLP
Att: Joanne Franzel, Esq.
200 Park Avenue
New York, NY 10166

Fried Frank Harris Shriver & Jaconson
Att: Michael Werner, Esq.
1 New York Plaza
New York, NY 10004

Oxford I Asset Management USA
Att: Loan Dept.
450 Park Avenue
New York, NY 10022

Power PDF Trial
www.kofax.com

109546

# EXTENSION OF MECHANIC'S LIEN

ORIGINAL

To the Clerk of the County of New York and all others whom it may concern:

**Please Take Notice,** that the lienors named below extend for one year from the date of filing of this Extension the lien on the real property described as follows:

(1) The names of the lienor(s) is/are LMEC Electric, Inc.

(2) The owner of the real property against whose interest the lien is claimed is 50 HYMC Owner LLC

(3) The name of the person by whom the lienor(s) was employed is JC Elite Construction Services, LLC
The name of the person to whom the lienor(s) furnished or is (are) to furnish material or for whom the lienor(s) performed or is (are) to perform professional services is JC Elite Construction Services, LLC
The name of the person with whom the contract was made is JC Elite Construction Services, LLC

(4) The property subject to the lien is situated in:

the Borough of Manhattan, County of New York, City of New York
50 Hudson Yards "64FL"
New York, NY
**Block:** 705 **Lot:** 39

FILED
COUNTY CLERK
N.Y. COUNTY
2025 JUL 14 A 10:54

(5) The amount of the lien is $66,602.88

(6) The date of filing the notice of lien July 24, 2024.

This is not a lien on real property improved or to be improved with a single family dwelling.

Dated: 7/9/2025

The name signed must be printed beneath

**Mark Nash, Agent of**
**LMEC Electric, Inc.**

ORIGINAL

STATE OF NEW YORK, COUNTY OF ss.: INDIVIDUAL OR PARTNER

<<Officer[CoPart]>> Being duly sworn, says that deponent is Agent of the co-partnership named in the within Extension of Mechanic's Lien and the lienor(s) mentioned in the foregoing Extension of Mechanic's Lien; that deponent has read the said notice and knows the contents thereof, and that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters deponent believes it to be true.

Sworn to before me on

<<Officer[CoPart]>>,

STATE OF NEW YORK, COUNTY OF New York ss.: CORPORATION

Mark Nash, Agent being duly sworn, says that deponent is the Agent of LMEC Electric, Inc. herein, that deponent has read the foregoing Extension of Mechanic's Lien and knows the contents thereof, and that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters deponent believes it to be true. The reason why this verification is made by deponent is that deponent is an officer, to wit, the Agent of LMEC Electric, Inc. which is a corporation, and deponent is familiar with the facts and circumstances herein.

The sources of deponent's information and the grounds of deponent's belief as to all matters not therein stated upon deponent's knowledge are as follows:

**Mark Nash, Agent of**
**LMEC Electric, Inc.**

State of New York

ss:

County of Nassau

On the 9 day of July in the year 2025, before me, the undersigned, a Notary Public in and for said State, personally appeared Mark Nash personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which individual acted, executed the instrument.

Signature and Office of Individual making acknowledgements

LALI CHAN HARDEO
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01HA6401618
Qualified in Queens County
Commission Expires December 16, 2027